## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

IN RE:
**Scott Darrell Hall**

**Debtor**

CASE NO. 17-07950-JMC-7
CHAPTER 7

### MOTION FOR ORDER AUTHORIZING
### ABANDONMENT AND MODIFYING AUTOMATIC STAY

Comes now U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust, ("Creditor"), by and through its attorney, Codilis Law, LLC, and in support of its Motion for Order Authorizing Abandonment and Modifying Automatic Stay, states as follows:

1. The Creditor is the holder of a mortgage on the property located at 5987 Gadsen Drive, Plainfield, IN 46168-7532.

2. The Creditor holds a security interest in said property by way of written instruments, which were perfected as provided by law. True and exact copies of said instruments, with proof of perfection, are attached hereto and made a part hereof.

3. As of November 28, 2017 the payoff amount is $174,490.77 and the interest rate is 6.00000% per annum.

4. Schedule D lists other secured creditors with claims totaling $266.00 against the real estate.

5. The real estate is valued at $128,300.00 on the bankruptcy schedules.

6. The debtor does not claim an exemption with respect to the subject property.

7. The Statement of Intention calls for surrender of the real estate to Creditor. The automatic stay should be modified pursuant to 11 U.S.C. §362(d)(1).

8. Said property is of inconsequential value and benefit to the estate and should be abandoned from the bankruptcy estate pursuant to 11 U.S.C. §554(b).

9. The creditor hereby waives the right under 11 U.S.C. §362(e) to a hearing on this motion within thirty (30) days of the date it is filed.

**WHEREFORE**, this Creditor requests that:

1. The Automatic Stay of this proceeding be terminated as to this Creditor, its agents, successors and assigns.

2. The subject property be abandoned from the bankruptcy estate.

3.  That the Court waive the fourteen day stay of the Order granting this motion, pursuant to Bankruptcy Rule 4001(a)(3); and

4.  For any and all other just and proper relief that the Court sees fit.

Attorneys for Creditor

By:  _Kristin L. Durianski_

Kristin L. Durianski    24866-64
Codilis Law, LLC
Atty File: 1025804

**This firm is deemed to be a debt collector.**

## CERTIFICATE OF SERVICE

I certify that on _November 30, 2017_, a copy of the attached was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Brent Welke; brentwelke@att.net
Jenice Golson Dunlap; jgolsondunlap@gmail.com
United States Trustee, S.D., IN; ustpregion10.in.ecf@usdoj.gov

I further certify that on _November 30, 2017_, a copy of the attached was mailed by depositing in the U.S. Mail to the following:

Scott Darrell Hall
5987 Gradsen Drive
Plainfield, IN  46168

Attorneys for Creditor

By:  _Kristin L. Durianski_

Kristin L. Durianski    24866-64

Codilis Law, LLC
8050 Cleveland Place
Merrillville, IN 46410
(219) 736-5579
bankruptcy@codilis.com
Atty File: 1025804

200200018220
Filed for Record in
HENDRICKS COUNTY IN
THERESA D LYNCH
05-31-2002 At 01:28 PM.
MORTGAGE        33.00
OR Book  337 Page 2254 - 2266

ﾟTIC/Tﾟ

ﾟile # __ ▮▮▮

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon
Simi Valley, CA 93063-6712

——————————— [Space Above This Line For Recording Data] ———————————

| ▮▮▮ | ▮▮▮ | ▮▮▮ |
| [Case #] | [Escrow/Closing #] | [Doc ID #] |

**State of Indiana**

# MORTGAGE

MIN ▮▮▮▮▮▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on MAY 24, 2002                    . The Mortgagor is
SCOTT D HALL,

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the
laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE HOME LOANS, INC.                                                                                ,
("Lender") is organized and existing under the laws of NEW YORK                          , and has an address of
4500 Park Granada, Calabasas, CA 91302-1613
                                                                                                            .
Borrower owes Lender the principal sum of
ONE HUNDRED TWENTY ONE THOUSAND EIGHT HUNDRED NINETY ONE and 00/100
Dollars (U.S. $   121,891.00        ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JUNE 01, 2032            . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note,
with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to
MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns to MERS, the

---

**FHA Indiana Mortgage with MERS - 4/96**

 -4N(IN) (0102)     CHL (02/01)

Page 1 of 8
VMP MORTGAGE FORMS - (800)521-7291

Initials: _SH_.

Amended 2/01

13

CASE #:                        DOC ID #

following described property located in HENDRICKS      County, Indiana:
LOT NUMBERED 88 IN GLEN HAVEN, SECTION TWO, AN ADDITION TO THE TOWN OF
PLAINFIELD, HENDRICKS COUNTY, INDIANA, AS PER PLAT THEREOF, RECORDED
MARCH 20, 2000, IN PLAT CABINET 3, SLIDE 60, PAGES 2A AND 2B, IN THE
OFFICE OF THE RECORDER OF HENDRICKS COUNTY, INDIANA.

which has the address of
5987 GADSEN DR, PLAINFIELD

[Street, City]

Indiana 46168-7532 ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all

CASE #: ▮▮▮▮▮▮▮▮    3    DOC ID # ▮▮▮▮▮▮▮

improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

⟁VMP₍ₘ₎ **-4N(IN)** (0102)    CHL (02/01)    Page 3 of 8    Initials: 𝒮.𝑙.

CASE #: ⬛⬛⬛⬛⬛⬛    4    DOC ID #: ⬛⬛⬛⬛⬛⬛

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

CASE #: ███████████            5            DOC ID # ███████████

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

20. **Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☒ Other [specify]
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider          ADSUSTABLE RATE RIDER

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
SCOTT D HALL                -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

b

CASE #: ███████████

STATE OF INDIANA,                    Marion

DOC ID # ████████████

County ss:

On this      24      day of      May      , 2002      , before me, the undersigned, a Notary
Public in and for said County, personally appeared

Scott D. Hall

, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission Expires:

Notary Public _____

This instrument was prepared by: M. STARR

M. JOYCE CRABTREE
Res. of Putnam Co.
Comm. Exp. 10-2-2008

NOTARY PUBLIC
SEAL
INDIANA

7

# PLANNED UNIT DEVELOPMENT RIDER

WHEN RECORDED MAIL TO:
COUNTRYWIDE HOME LOANS, INC.

MSN SV-79 / DOCUMENT CONTROL DEPT.
P.O. BOX 10266
VAN NUYS, CALIFORNIA 91410-0266

DOC ID #:

ESCROW/CLOSING #

SPACE ABOVE FOR RECORDERS USE

By: MELISSA STARR

FHA CASE NO

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th day of May , 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
5987 GADSEN DR, PLAINFIELD IN, 46168-7532
[Property Address]

Page 1 of 3

-589U (9705).02 CHL (03/01)   VMP MORTGAGE FORMS - (800)521-7291

FHA Multistate PUD Rider - 10/95
Initials

| CASE #: ██████████ | | DOC ID # ████████████ |
|---|---|---|

The Property Address is a part of a planned unit development ("PUD") known as
**GLEN HAVEN**
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

GMP  -589U (9705).02   CHL (03/01)        Page 2 of 3              Initials: _S.L._

9

CASE #: ████████████          DOC ID #██████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
SCOTT D HALL                                    -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

-589U (9705) 02 CHL (03/01)          Page 3 of 3

*10*

# ADJUSTABLE RATE RIDER

**WHEN RECORDED MAIL TO:**
COUNTRYWIDE HOME LOANS, INC.

SPACE ABOVE FOR RECORDERS USE

MSN SV-79 / DOCUMENT CONTROL DEPT.
P.O. BOX 10266
VAN NUYS, CALIFORNIA 91410-0266

By: MELISSA STARR

DOC ID #
ESCROW/CLOSING #

FHA CASE NO.

THIS ADJUSTABLE RATE RIDER is made this 24th day of May      , 2002, and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed
("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
5987 GADSEN DR, PLAINFIELD IN, 46168-7532
[Property Address]

Page 1 of 4

 -591U (9705).02 CHL (03/01)  VMP MORTGAGE FORMS - (800)521-7291

FHA Multistate ARM Rider - 10/95
Initials: _S.H_.

11

CASE #: [redacted]                                    DOC ID # [redacted]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Date**

The interest rate may change on the first day of October     , 2003   , and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

**(B) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary means the Secretary of Housing and Urban Development or his or her designee." Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of TWO & THREE-QUARTERS         percentage point(s) ( 2.750    %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate, as stated in paragraph 2 of the Note.

⊕ -591U (9705).02 CHL (03/01)              Page 2 of 4                    Initials: [signature]

/2

CASE #: ▮▮▮▮▮▮▮▮▮▮▮▮                    DOC ID # ▮▮▮▮▮▮▮▮▮▮

### (E) Calculation of Payment Change

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

### (F) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

### (G) Effective Date of Changes

A new interest rate calculated in accordance with paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

⬛ -591U (9705).02  CHL (03/01)          Page 3 of 4                    Initials: _SA._

/ 3

CASE #: ██████████          DOC ID #██████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
SCOTT D HALL                    - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

Page 4 of 4

-591U (9705).02 CHL (03/01)



200900364

PAUL T HARDIN
HENDRICKS COUNTY RECORDER
01/09/2009 08:08:32AM

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitment

For value received, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC, 1595 SPRING HILL ROAD, SUITE 310, VIENNA, VA 22182, hereby grants, assigns and transfers to:
COUNTRYWIDE HOME LOANS, INC.
1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

All its interest under that certain Mortgage dated 5/24/02, executed by: SCOTT D HALL, Mortgagor as per MORTGAGE recorded as Instrument No. 200200018220 on 5/31/02 in Book 337 Page 2254 of official records in the County Recorder's Office of HENDRICKS County, INDIANA.
  The Trustee is CTC Real Estate Services.
Tax Parcel = 021-203411-487012,   HENDRICKS COUNTY TREASURER
Original Mortgage $121,891.00
5987 GADSEN DR, PLAINFIELD, IN 46168

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 12/15/2008        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, AS NOMINEE
                         FOR COUNTRYWIDE HOME LOANS, INC

                    By
                         Melissa Taylor, Assistant Secretary .

State of California
County of Ventura

On 12/19/08 before me, K. Yaghobi , Notary Public, personally appeared Melissa Taylor, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:
          K. Yaghobi

K. YAGHOBI
Commission # 1766014
Notary Public - California
Ventura County
My Comm. Expires Sep 7, 2011

Recording requested by AND
When recorded mail to:
COUNTRYWIDE HOME LOANS, INC
DOCUMENT PROCESSING Mail Code:
CA6-914-01-43
PO BOX 10423
VAN NUYS, CA, 91499-6211
Attn: ASSIGNMENT UNIT
Phone#: (805) 577-4642   Ext: 4642

Prepared by: Kathie Tepoxtecatl

"I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law."

x Kathie Tepoxtecatl
Kathie Tepoxtecatl

38

12/
1+1

*DA*

*201302184 2*

201302184
THERESA D LYNCH
HENDRICKS COUNTY RECORDER
01/22/2013 12:46:46PM

Recording requested by

And when recorded mail to:
Grantee's mailing address:
Marinosci Law Group, P.C.
2110 North Calumet Avenue
Valparaiso, IN 46383
**File No.** ███████
**Hall**

Space above this line for Recorder's use only

**IMPORTANT NOTICE**

After having been recorded, this Assignment should be kept with the Note and Mortgage hereby assigned

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to **BANK OF AMERICA, N.A., 7105 Corporate Drive, PTX_B_209, Plano, Texas 75024,** all beneficial interest under that certain Mortgage in the original amount of $121,891.00, dated **May 24, 2002,** executed by **SCOTT D. HALL,** to secure certain obligations in favor of **Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.,** as beneficiary, recorded **May 31, 2002,** as Instrument No.: **200200018220,** and further assigned by assignment to **Countrywide Home Loans, Inc.,** recorded **January 9, 2009** as **Instrument No.: 200900364,** and further assigned by assignment to **Countrywide Home Loans Servicing, L.P.,** recorded **February 26, 2009** as Instrument No.: **200904472,** and re-recorded **April 6, 2009** as **Instrument No.: 200908140** and further assigned by assignment to **BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P. ,** recorded **March 9, 2010** as **Instrument No.: 201004486** in the office records in the Office of the Recorder of **Hendricks** County, Indiana.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part the real property described therein.

5987 Gadsen Drive , Plainfield , IN 46168



**Hall**

Dated: *August 29, 2012*

*Bank of America, N.A. S/B/M to*
BAC Home Loans Servicing, L.P. f/k/a
Countrywide Home Loans Servicing, L.P.

By: _____

Its: *Kevin Anthony Middleton*
*Assistant Vice President*

STATE OF ~~CALIFORNIA~~ *Texas KM* )
                           *2nd* ) SS:
COUNTY OF *Dallas* )

On *August 29, 2012*, before me, *Evelyn A. Denton,*
*Notary Public,* (Insert Name and Title of Officer) personally
appeared *Kevin Anthony Middleton* who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) (is) are subscribed to the within instrument and
acknowledged to me that (he) she/they executed the same in (his) her/their authorized capacity(ies),
and that by (his) her/their signature(s) on the instrument the person(s), or the entity upon behalf or
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ *Texas KM* that the
*2nd* foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

(Seal)

*Evelyn A. Denton*
Printed Name

I affirm under the penalties for perjury that I have taken reasonable care to redact each social
security number in this document unless required by law.
David M. Bengs

This instrument prepared by: David M. Bengs, Esq., 2110 N. Calumet Avenue, Valparaiso, IN
46383; Telephone: (219) 462-5104

5987 Gadsen Drive , Plainfield , IN 46168

EVELYN A. DENTON
Notary Public, State of Texas
My Commission Expires
March 17, 2013

```
201704884 MAS        $17.00
03/01/2017 03:44:48PM 2 PGS
Theresa Lynch
Hendricks County Recorder IN
Recorded as Presented
```

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Space above for Recorder's use

Loan No:
Svcr Ln No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A.**, whose address is **2505 W. CHANDLER BLVD., BUILDING D, CHANDLER, AZ 85224**, (ASSIGNOR), does hereby grant, assign and transfer to **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**, whose address is **C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 05/24/2002
Original Loan Amount: $121,891.00
Executed by (Borrower(s)): **SCOTT D HALL**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume 337, Page **2254**,
Document/Instrument No: 200200018220 in the Recording District of **HENDRICKS, IN**, Recorded on 05/31/2002.

Property more commonly described as: **5987 GADSEN DR, PLAINFIELD, INDIANA 46168-7532**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _2|15|2017_

BANK OF AMERICA, N.A.

By: _____ Julio Estrada
Title: _____ Vice President

Witness Name: _____ Janay Taylor

Ocwen-Fay

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **FLORIDA**
County of **HILLSBOROUGH**

On **2/15/17**, before me, **David S. Hilbert**, a Notary Public, personally appeared **Julio Estrada**, **Vice President** of/for BANK OF AMERICA, N.A. personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify **Julio Estrada**, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **David S. Hilbert**
My commission expires: **5/22/20**

DAVID S. HILBERT
Notary Public, State of Florida
Commission# FF 994926
My comm. expires May 22, 2020

Ocwen-Fay

201717578 MAS        $25.00
07/28/2017 02:05:26PM 2 PGS
Theresa Lynch
Hendricks County Recorder IN
Recorded as Presented

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No █████████
Sver Ln No █████

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2**, whose address is C/O **ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST**, whose address is **U.S. BANK CORPORATE TRUST SERVICES, DOCUMENT CUSTODY SERVICES, 1133 RANKIN STREET, SUITE 100, ST. PAUL, MN 55116, EP-MN-TMZD**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 5/24/2002
Original Loan Amount: $121,891.00
Executed by (Borrower(s)): SCOTT D HALL
Original Lender:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Mortgage Book/Liber/Volume 337, Page 2254,
Document/Instrument No: 200200018220 in the Recording District of HENDRICKS, IN, Recorded on 5/31/2002.

Property more commonly described as: **5987 GADSEN DR, PLAINFIELD, INDIANA 46168-7532**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  *6-29-17*

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2, BY MERIDIAN ASSET SERVICES, INC., ITS ATTORNEY-IN-FACT**

By: **MATTHEW KRUEGER**
Title: **VICE PRESIDENT**

Witness Name: **MAKAYLA MITCHELL**

POA was recorded in Hendricks County, IN
3/2/2017 Inst#201704956

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of      **PINELLAS**

On ___6/29/17___, before me, **JAMIE OLGIA**, a Notary Public, personally appeared **MATTHEW KRUEGER, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, INC., AS ATTORNEY-IN-FACT FOR CERISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 2,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct.  I further certify MATTHEW KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **JAMIE OLGIA**
My commission expires: **04/12/2020**

JAMIE OLGIA
MY COMMISSION # FF 981366
EXPIRES: April 12, 2020
Bonded Thru Budget Notary Services

Prepared by: M. STARR

**Multistate**

# ADJUSTABLE RATE NOTE

FHA Case No.

LOAN #: ▮▮▮▮▮▮▮▮

MAY 24, 2002
[Date]
5987 GADSEN DR, PLAINFIELD, IN 46168-7532
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COUNTRYWIDE HOME LOANS, INC.
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED TWENTY ONE THOUSAND EIGHT HUNDRED NINETY ONE and 00/100
Dollars (U.S. $ 121,891.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from
the date of disbursement of the loan proceeds by Lender, at a rate of FIVE & SEVEN-EIGHTHS       percent
( 5.875   %) per year until the full amount of principal has been paid. The interest rate may change in accordance with
Paragraph 5(C) of this Note.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
July 01       , 2002 . Any principal and interest remaining on the first day of June  1   , 2032 , will be due on
that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at
4500 Park Granada, Calabasas, CA 91302-1613
or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Initially, each monthly payment of principal and interest will be in the amount of U.S. $ 721.03        . This
amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest
and other items in the order described in the Security Instrument. This amount may change in accordance with Paragraph 5(E) of
this Note.

## 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Date

The interest rate may change on the first day of October    , 2003 , and on that day of each succeeding year.
"Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average
yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve
Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined
above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in Paragraph
7(B)). Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of
TWO & THREE-QUARTERS       percentage point(s) ( 2.750   %) to the Current Index and rounding the sum to the
nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded
amount will be the new interest rate until the next Change Date.

-590 (9601).02      CHL (08/01)      VMP MORTGAGE FORMS - (800)521-7291

FHA Multistate Adjustable Rate Note - 10/95

Initials: _____



CASE #: ███████████        LOAN #: ███████

**(D) Limits on Interest Rate Changes**

The existing interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

**(E) Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

## 6. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 7. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR        percent ( 4.000  %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 8. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.



CASE #: ▮▮▮▮▮▮                                              LOAN #: ▮▮▮▮▮▮

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**YOU ARE NOT OBLIGATED TO PAY ANY MONEY UNLESS YOU SIGN THIS CONTRACT AND RETURN IT TO THE SELLER / LENDER.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
SCOTT D HALL                     -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Pay to the Order of                    Pay to the Order of
Countrywide Home Loans Servicing LP    _____
Without recourse                       without recourse
Countrywide Home Loans Inc.            Countrywide Home Loans Servicing LP

_____       _____
Andrew Sale                            Andrew Sale
Assistant Secretary                    Assistant Secretary



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners Is What We Do! ™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

6/16/2014

Loan Number:  ▮▮▮▮▮▮▮
Property Address:    5987 Gadsen Dr, Plainfield, IN 46168

Scott D Hall
5987 Gadsen Dr
Plainfield, IN 46168

## PROPOSED MODIFICATION AGREEMENT

Dear Borrower(s):

Enclosed please find a proposed modification agreement (the "Agreement") on your loan referenced above for your review and consideration.

In order to accept this modification on your loan, you must complete ALL of the following steps **on or before 7/1/2014,** ("Due Date"):

1.  SIGN the bottom of the Agreement on the line(s)  for the Borrower(s);

2.  FAX the fully executed Agreement to:        Attention: Home Retention Department
                                                (407) 737-5693

3.  PAY the full down payment in the amount of:  $1,052.36
                                                [See Payment Instructions Attached]

4.  NEW MONTHLY PAYMENT:
    Principal and Interest Payment:              $ 868.07
    Escrow Payment:                              $ 184.29
    Total                                        $1,052.36
                                                starting on 8/1/2014.

5.  SEND proof of insurance coverage*            Attention: Escrow Department
    (Send proof of insurance ONLY to Escrow      Fax: (888)-882-1816
    Dept. DO NOT include the Agreement.)         E-mail : updateinsuranceinfo@ocwen.com

**\* Proof of insurance and the Agreement must be sent separately to the correct departments using the fax numbers provided above.**
If your loan is not currently escrowed, you must provide Ocwen Proof of Insurance (Declaration Page) on or before 7/1/2014.  If no proof of insurance is received by 7/1/2014, an insurance policy will be lender-placed with the monthly cost included in your mortgage payment. The cost of lender-placed insurance may be more expensive than insurance you may obtain for yourself.
Time is of the essence on this offer. If ALL of the items above are not completed by the Due Date, which includes the receipt of an executed counterpart to the Agreement signed by all parties, the Agreement will have no force or effect and

7180030459                                   Page 1 of Page 5

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.





Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

the original terms of your note will apply. Any down payment received will be applied in accordance with the original terms of your loan agreement. Please be advised that Ocwen Loan Servicing, LLC will not delay, postpone or otherwise stop any collection efforts until ALL of the steps above have been completed.

If you have any questions or require additional information, please contact the Customer Care Center directly at (800) 746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Sincerely,

Ocwen Loan Servicing, LLC

### PAYMENT REMITTANCE INFORMATION
1  Make checks payable to Ocwen Loan Servicing, LLC.
2  Always include your loan number with your payment.

### OVERNIGHT DELIVERY
### (Personal Check, Money Order or Certified Checks)
Ocwen Loan Servicing, LLC
ATTN: Cashiering Department
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

**MONEY GRAM**
RECEIVER CODE ▮
PAYABLE TO: OCWEN LOAN SERVICING, LLC
CITY: ORLANDO
STATE: FLORIDA
REFERENCE: LOAN # ▮
AGENT LOCATER: (800) 926-9400

**BY WUQC**
Code City: Ocwen
State: FL
Reference: Loan # ▮
Attn: Home Retention Department

**BANK:** Wells Fargo Bank, NA
**ABA** ▮
**ACCOUNT NAME:** OCWEN Loan Servicing, LLC  in Trust for Various Investors and Mortgagors
**ACCOUNT NUMBER:** ▮
**REFERENCE:** Loan Number, Property Address, and Borrower Name
**Email:** Transferfunds@ocwen.com with the details of the wire

▮                    Page 2 of Page 5

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.





Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners Is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

### LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 6/16/2014, which modifies the terms of your home loan obligations as described in detail below:

A    the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of, Hendricks County, and

B    the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 5987 Gadsen Dr, Plainfield, IN 46168.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1    In order for the terms of this modification to become effective, you promise to make an initial down payment ("Down Payment") of  $1,052.36 on or before 7/1/2014 and Two (2) equal monthly payments of principal and interest in the amount of  $ 868.07, and any escrowed amount as outlined in section 3 below, to Ocwen ("Trial Period") beginning on 8/1/2014, and thereafter due on same day of each succeeding month.

2    You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be  $150,000.00. Upon modification, your Note will become contractually current; however, fees and charges that were not included in this principal balance will be your responsibility.

3    You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4    If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

5    After the Trial Period expiration, you promise to make payments of principal and interest, and, if applicable, any escrowed amount as outlined in section 3, on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full.

6    Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be converted to a fixed rate of  6.00000% .  This rate will remain in effect until the maturity date of your loan 9/1/2040.


Page 3 of Page 5

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.



Commentary



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

7   If you sell your property, refinance, or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

8   You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

9   You understand and agree that:

   a   All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

   b   All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

   c   Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement..

   d   Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

   e   In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period.

   f   During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

   g   You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

   h   You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

   i   Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

Ocwen Loan Servicing, LLC                    Scott D Hall

By:  **Bendiane Zephir**
     Authorized Officer      NOV 0 6 2014

Page 4 of Page 5

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.





Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do! ™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

6/16/2014

## BALLOON DISCLOSURE

Loan Number:          ████████

Property Address:     5987 Gadsen Dr Plainfield, IN 46168

The loan modification for which you have applied contains a balloon provision. This means that even if you make all payments full and on time, the loan will not be paid in full by the final payment date. A single balloon payment will be due and payable in full on 9/1/2040, provided that all payments are made in accordance with the loan terms and the interest rate does not change. Your estimated balloon payment amount is $61,677.39 and will be due in a single payment on 9/1/2040 for the entire loan term. The balloon payment may vary depending on your payment history, and, if you have an adjustable rate mortgage, any interest rate changes that occur during the life of the loan.

Neither Ocwen Loan Servicing, LLC nor any lender to which your loan is transferred or assigned is under any obligation to finance the amount of the balloon payment. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.

_____
Borrower Scott D Hall

6-27-14
Date

_____
**Bendiane Zephir**
**Servicing Operations Specialist**

_____
Borrower

_____
Date

NOV 0 6 2014

████████                    Page 5 of Page 5

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.


NMLS# 1852